UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ARTHREX, INC. <br><br>     Plaintiff and Counter-Defendant, <br><br> v. <br><br> PARCUS MEDICAL, LLC, <br><br>     Defendant and Counter-Plaintiff. | Civil Action No. 2:11-cv-694-FtM-29SPC <br><br> JURY TRIAL DEMANDED |

**DEFENDANT'S MOTION TO COMPEL SUPPLEMENTAL ANSWERS TO INTERROGATORIES**

Pursuant to Fed. R. Civ. P 37(a) and Local Rule 3.04(a), defendant, Parcus Medical, LLC ("Parcus") respectfully moves this Court for an Order compelling plaintiff, Arthrex, Inc. ("Arthrex") to respond fully completely and with meaningful specificity, and without objection, to Parcus' Interrogatories Nos. 1, 8 and 10 to which Arthrex has failed to properly respond.

**INTRODUCTION**

On December 15, 2010, Arthrex filed its complaint alleging that Parcus infringed two patents: United States Patent No. 5,993,451 ("the '451 patent") entitled "Cannulated Suture Anchor Drill Guide" and United States Patent No. 6,641,597 ("the '597 patent") entitled "Interference Fit Knotless Suture Anchor Fixation." ECF No. 1. In its complaint, Arthrex alleged that Parcus' infringement of the '451 patent included but was "not limited to Parcus' V-Mouth Drill Guide (Part No. 10330) and 8-Point Drill Guide (Part No. 10446) instrumentation," and that Parcus' infringement of the '597 patent included but was "not limited to Parcus' Series 3

Suture Anchors (Part Nos. 10323T and 10313) and Parcus' V-LoX Hybrid Suture Anchors (Part No. 10354T)." *Id.* at ¶¶ 17 and 23.  Arthrex further alleged that the purported infringement was "deliberate" and "willful" and requested treble damages and attorney fees and costs pursuant to 35 U.S.C. §285. *Id.* at 5.

On March 16, 2012, Parcus served ten interrogatories ("Parcus' Interrogatories") on Arthrex requiring that Arthrex, *inter alia*, detail its contentions (i.e. the required good faith basis underlying the allegations in its pleading) that certain Parcus' products infringed the two asserted patents.  *See* Ex. 1.  On April 16, 2012, Arthrex purported to respond to nine of the ten interrogatories and refused to answer the tenth, claiming (without reasoning or explanation) that "this interrogatory exceeds the total of 25 interrogatories permitted under Fed. R. Civ. P. 33." *See* Ex. 2 at 14.  And while Arthrex purported to "respond" to the other nine interrogatories, Arthrex's responses were incomplete, vague and facially evasive.  Arthrex brought this case for alleged patent infringement, yet it failed to support its foundational contention and identify where even a single element of a single claim of either the '451 or '597 patent could be found on any accused Parcus' product.  *See* Ex. 2 at 5-7 (including Exhibits A and B appended thereto).

Arthrex's bad faith attempt to obfuscate the lack of merit underlying its contentions (if, in fact, it has such any contentions) in responding to Parcus' interrogatories is transparent.  Arthrex's attempt to evade answering Interrogatory No. 10 (and presumably any additional interrogatories) based on its assertion that Parcus' first nine interrogatories somehow equal twenty-five, particularly given the specificity and narrow scope of each of Parcus' interrogatory requests, further highlights Arthrex's gamesmanship.  But this is not a game.  Arthrex cannot withhold the basis for its contentions that Parcus infringes any claims of its patents, that is, if Arthrex had any basis in the first place.

**ARGUMENT**

Federal Rule of Civil Procedure 33 permits a party to propound interrogatories which "may relate to any matter that may be inquired into under Rule 26(b)." Under Rule 26(b), a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *See Anglin v. Maxim Healthcare Svcs.*, 2009 Dist. LEXIS 34562, at *5 (M.D. Fla. 2009) (citing *Oppenheimer Find, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (noting Rule 2 contemplates "any matter that bears on, or that reasonably could lead to other matters that that could bear on, any issue that is or may be in the case."). Arthrex's complaint alleged that Parcus infringes two of its patents. Thus, there is no question that the contentions underlying Arthrex's allegations of patent infringement "may be inquired into" via interrogatories under Rule 33.

Arthrex cannot claim that it does not have or need to produce the information Parcus has requested, nor that it is protected by any form of privilege. Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]"). When it filed the instant action asserting two patents against Parcus, Arthrex was required to have a good faith basis to bring suit, including interpreting the scope of the asserted claims and how the accused products met all of the recited limitations. Fed. R. Civ. P. 11; *PPS Data, LLC v. Athenahealth, Inc.*, No. 11–cv–746, 2012 WL 601208, at *1 (M.D. Fla. Feb. 23, 2012) (holding that prior to filing a patent infringement suit "Rule 11 requires a two-step pre-filing analysis: (1) an investigation into the legal basis of the claim of patent infringement (i.e., a pre-filing "claim interpretation analysis"); and (2) ***a fact-intensive comparison of the accused product and the asserted claim(s)***.") (emphasis added); *see also Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004) ("In the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum,

that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement."); *Judin v. United States,* 110 F.3d 780, 784 (Fed. Cir. 1997) (Rule 11 requires "that the inquiry [as to whether the accused devices satisfied the claim limitations] be undertaken before the suit is filed, not after."). The Federal Circuit explained that:

> A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs -- precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important. In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement. Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions[.]

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000).

To meet the requirements of Rule 11, it follows then that Arthrex *must* have (1) performed a pre-filing claim interpretation analysis and (2) performed a "a fact-intensive comparison of the accused product and the asserted claim(s)." *PPS Data,* WL 601208, at *1. If Arthrex fulfilled its duties under Rule 11, it must have a detailed theory of Parcus' alleged infringement and Arthrex must provide that information in response to Parcus' Interrogatories 1 and 8 seeking those contentions.

### I. Arthrex's Deficient Responses Are In Violation Of The Rules

#### a. Parcus' Interrogatory No. 1

Parcus' Interrogatory No. 1 requested precisely such an element-by-element infringement allegation. But rather than set forth the basis for its allegations, Arthrex interposed various meritless allegations and provided a cut-and-paste response that is plainly insufficient to withstand scrutiny (or a motion for summary judgment).

*Interrogatory No. 1*

*State the Basis for any contention by Arthrex that "[u]pon information and belief, Parcus is directly infring[ing] and has directly infringed and/or induced infringement of and/or contributed to the infringement of the [Arthrex Patents]"[1] including an identification of each product and/or act accused of infringement and the date on which each said alleged infringement and/or act allegedly occurred; and for each such accused product and/or act, identify each claim of the Arthrex Patents that Arthrex contends is infringed, and for each such claim, identify in detail on an element-by-element basis (in the form of a claim chart) how each limitation is allegedly satisfied either literally or under the doctrine of equivalents, including an identification of all information, documents, communications and/or things that support, contravene, concern or relate to Arthrex's contention(s).*

Objections to Interrogatory No. 1

Arthrex objects to this interrogatory on the ground that it is premature at this stage of the litigation. Arthrex further objects to this interrogatory to the extent that it seeks information that is protected by attorney-client privilege, the work product doctrine, or any other applicable privilege. Arthrex further objects to this interrogatory to the extent it seeks information that is outside of Arthrex's possession, custody and control. Arthrex also objects to this interrogatory as being vague, overly broad and unduly burdensome and oppressive to the extent that it seeks information that is either already in Parcus' possession or equally available or more readily available to Parcus. Furthermore, discovery in this case is preliminary. Arthrex expects to obtain additional information through discovery from Parcus and, potentially, others. In addition, it should be understood that Arthrex's contentions are preliminary and could change based on the Court's claim construction ruling or other rulings. Accordingly, Arthrex reserves the right to revise and/or supplement its contentions based on any such rulings.

Ex. 2 at 5-6. This interrogatory is not "premature;" it seeks the basis for an allegation that is quoted directly from Arthrex's complaint. *See Powell v. The Home Depot USA, Inc.,* No. 07-80435, 2008 WL 2473748, at *7 (S.D. Fla. Jun. 16, 2008) (The "[a]rgument that the interrogatory is a premature contention interrogatory is unpersuasive because '[o]pinion and contention interrogatories are used routinely.'") (citing Fed. R. Civ. P. 33). The interrogatory does not seek privileged information, or information that is outside of Arthrex's possession custody or control – it seeks only the basis for the allegations Arthrex itself pleaded. *Perfect*

---

[1] Complaint, ECF No. 1 at ¶¶ 17 & 23, Counts I&II.

- 5 -

*Web Techs., Inc. v. Infousa, Inc.,* No. 07-cv-80286, 2008 WL 725726, at *3 (S.D. Fla. Mar. 17, 2008) (emphatically rejecting work product doctrine and holding that "[a] factual evidentiary basis [] does not necessarily 'implicate the work product doctrine.'"). Nor is the interrogatory "vague, overly broad or unduly burdensome and oppressive to the extent that it seeks information that is either already in Parcus' possession or . . . available to Parcus." Again, the Interrogatory seeks the contentions that form the foundation of Arthrex's complaint for patent infringement. *See Gober v. City of Leesburg,* 197 F.R.D. 519, 521 (M.D. Fla. 2000) ("The party resisting production of information bears the burden of establishing lack of relevancy or undue burden in supplying the requested information"); *Coker v. Duke & Co.,* 177 F.R.D. 682, 686 (M.D. Ala. 1998) ("[A]n objection must show specifically how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden ."). Such contentions, and the factual basis (if any) therefore are known only to Arthrex and are not "in Parcus' possession" or otherwise "available" to Parcus. Here, it is axiomatic that patent infringement requires a two-step analysis: (1) determining the meaning and scope of the asserted claims; and (2) comparing those claims to the accused device. *AquaTex Indus, Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005); *see also Markman v. Westview Instruments*, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) *cert. denied*, 469 U.S. 824 (1984). This District has consistently held that the discovery and disclosure of infringement contentions is both proper *and required* in a patent infringement suit. *See Suncast Technologies, L.L.C. v. Patrician Products, Inc.*, No. 07-cv-80414, 2008 WL 197648, at *10 (S.D. Fla. Jan. 17, 2008) (holding that both infringement and non-infringement contentions must be provided by each party); *Omega Patents, LLC v. Lear Corp.,* No. 07-cv-1422, 2008 WL 719295, at **1-2 (M.D. Fla. Mar. 14, 2008). In *Suncast*, having analyzed various districts' local patent rules for

guidance, the court determined that "[t]aking these cases and various local patent rules into consideration, the Court finds that ***Plaintiffs must provide Defendant with their infringement contentions***." *Id.* (emphasis added). This Court went on to state that:

> Plaintiffs in this case have claimed literal infringement. …Consequently, ***there can be no doubt that Defendant's request for Plaintiffs' element-by-element infringement allegations involves relevant material that is properly the subject of contention interrogatories***. Plaintiffs, therefore, have an obligation to respond fully to Defendant's demand for Plaintiffs' contentions regarding how the Accused Product infringes each element of each claim allegedly infringed.

*Id.* (emphasis added) (internal citations omitted); *see also Perfect Web Techs.*, 2008 WL 725726, at *2 ("The use of interrogatories seeking 'element-by-element infringement allegations ... is properly the subject of contention interrogatories.'") (citing *Suncast*); *see also PPS Data*, 2012 WL 601208, at *1.

In any event, notwithstanding its improper objections, Arthrex provided the following response:

> Nevertheless, without waving its general and specific objections, Arthrex identifies Parcus' actions of making, using, selling, offering to sell and/or importing its Series 3 Push-In Suture Anchors [Product Nos. 10323T and 10313], 45 Knotless Peek CF Suture Anchors [Product No. 10314], V-Lox Hybrid Suture Anchors [Product No. 10354T], V-Mouth Drill Guide [Product No. 10330], and 8-Point Drill Guide [Product No. 10446] (hereinafter the "accused devices") as the alleged acts of infringement. These alleged acts of infringement are not intended to be limiting as Parcus continues to add infringing products to its product line as evidenced by its recent release of the 45 Knotless Peek CF Suture Anchors. Therefore, Arthrex reserves the right to identify additional accused devices as necessary to include additional products that Parcus may introduce into the marketplace that are covered by the patents-in-suit.
> Parcus' infringement of the patents-in-suit is continuing. The infringements began as early as November 15, 2010 for the Series 3 Push-In Suture Anchors, the V-Lox Hybrid Suture Anchors and the V-Mouth Drill Guide. Infringement began as early as June 1, 2011 for the 8- Point Drill Guide. Infringement began as early as February 2012 for the 45 Knotless Peek CF Suture Anchors.
> Arthrex identifies claims 1, 3, 5-7, 9 and 11 as the infringed claims of the '451 patent. Arthrex identifies claims 1-3, 7, 10 and 12-14 as the infringed claims of the '597 patent. Arthrex asserts that these claims are literally infringed. Also, each element of each asserted claim of each of the patents-in-suit is present in the accused devices under the doctrine of equivalents.

>Arthrex also provides the claim charts attached as Exhibit A and Exhibit B in response to this interrogatory. Finally, Arthrex states that the information and documents that support its contentions at this early juncture of the case include at least the '451 patent, the '597 patent, Parcus' product catalog, Parcus' directions for use for the accused products, Parcus' "Tech Guides" and other materials available on www.parcusmedical.com, and the accused products themselves.

Ex. 2 at 6-7. But far from providing the element-by-element infringement contention required under *Suncast*, Arthrex's "claim chart" recited the same cut-and-pasted non-responsive answers over and over again, for every claim, and every element, *e.g.*:

| CLAIM 1 | PARCUS' V-MOUTH DRILL GUIDE | PARCUS' 8-POINT DRILL GUIDE |
|---|---|---|
| A surgical instrument for installing a suture anchor into bone by turning the suture anchor using a driver, the instrument comprising: | Yes. *See* Directions for Use for Parcus Drill Guide for Suture Anchor Placement and Parcus' Tech Guides QD2346 and QD2356. | Yes. *See* Directions for Use for Parcus Drill Guide for Suture Anchor Placement and Parcus' Tech Guides QD2346 and QD2356. |
| a cannulated drill guide having a proximal end and a distal end; | Yes. *See* Directions for Use for Parcus Drill Guide for Suture Anchor Placement and Parcus' Tech Guides QD2346 and QD2356. | Yes. *See* Directions for Use for Parcus Drill Guide for Suture Anchor Placement and Parcus' Tech Guides QD2346 and QD2356. |
| a cylindrical handle having a central cannula disposed on the proximal end of the drill guide, the cannulae of the drill guide and the handle having a common central axis; | Yes. *See* Directions for Use for Parcus Drill Guide for Suture Anchor Placement and Parcus' Tech Guides QD2346 and QD2356. | Yes. *See* Directions for Use for Parcus Drill Guide for Suture Anchor Placement and Parcus' Tech Guides QD2346 and QD2356. |

Arthrex's naked and nonspecific generalized references to material such as the Parcus catalog and website, provide no relevant or meaningful information.[2] *See generally* Ex. 2 (Exhibits A and B: Arthrex's "claim charts") and Ex. 3 (Parcus' Tech Guides QD2346 and QD2356). Arthrex was required to provide far more specific information to Parcus in support of its contentions.

---

[2] As is evident from Arthrex's Claim Charts attached as Exhibits A-B to its response, Arthrex's stated "contention" is identical for each element, of each claim, for each patent. Thus, for the convenience of the Court and to satisfy the dictates of Local Rule 3.04(a), Parcus is only reproducing this representative sample in its motion, and attaching the so-called Claim Charts in full.

> [R]equests for opinions or contentions that call for the application of law to fact ... can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." Indeed, "discovery is designed to allow the defendant to pin down the plaintiff's theories of liability . . . thus confining discovery and trial preparation to information that is pertinent to the theories of the case.

Fed. R. Civ. P. 33 advisory committee's note; s*ee also e.g., REFAC Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1254-1256 (Fed. Cir. 1990) (upholding sanction of dismissal for plaintiff's failure to provide element-by-element infringement contentions); *Exxon Research & Eng. Co. v. U.S.,* 44 Fed. Cl. 597, 601-02 (Fed. Cl. 1999) (approving the use of infringement contention interrogatories)*; Suncast,* 2008 WL 197648, at **11-12.  In *Suncast*, the court held the plaintiff's responses were insufficient despite the plaintiff-patentee providing a claim chart with far more specificity than did Arthrex here.  While the subject responses in *Suncast* referenced the asserted claim elements and photographs and drawings of the accused products, the court required more:

> To the extent that Plaintiffs' Claim Chart neglects to identify any particular element of an allegedly infringed claim, Defendant's Cross-Motion is granted, and the Court directs Plaintiffs to amend their Claim Chart to reflect in a discernible manner each element of every allegedly infringed claim.

2008 WL 197648, at *11-12.

Arthrex's purported "claim charts" plainly fail to "reflect in a discernible manner each element of every allegedly infringed claim." *Id.*  Given the qualifications in its objections and meaningless responses, Arthrex is essentially foisting its burden onto Parcus, forcing Parcus to **guess** at how its products allegedly infringe and what Arthrex's purported good-faith basis for filing an infringement might have been.  As such, Arthrex's response fails to satisfy Arthrex's obligations under the Federal Rules.  Fed. R. Civ. P. 37.  ("An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."); *see also Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) ("The Federal Rules of Civil Procedure strongly favor full discovery whenever possible."); *Perfect Web Techs.,* 2008

WL 725726, at *2 ("The federal rules were intended to 'make trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent.'") (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)).

### b.  Parcus' Interrogatory No. 8

Interrogatory No. 8 reads:

> *For each claim identified in response to Interrogatory No. 1 identify each claim term and/or limitation that Arthrex contends requires construction, including a statement of Arthrex's proposed construction of each such term and/or limitation, and State the Basis for such a construction, including an identification of all information, documents, communications and/or things, including but not limited to an identification of each and every part of the specification, file history and/or other intrinsic and extrinsic evidence that Arthrex contends supports such a construction.*

Ex. 1 at 5. Arthrex flatly refused to answer this interrogatory until required to do so under the Court's Case Management and Scheduling Order. Ex. 2 at 12-13. But as with Arthrex's infringement contentions, Parcus is entitled to propound interrogatories and learn about Arthrex's construction of claim terms. *See Suncast*, 2008 WL 197648, at *12 ("Turning to Defendant's interrogatories seeking Plaintiffs' claim construction, the Court finds that such contention interrogatories are also permissible and appropriate. [] Indeed, all of the sets of local patent rules reviewed by this Court not only permit a party to discover its opponent's proposed claim construction, but require each party to divulge its proposed claim construction and supporting materials.") (internal citations omitted).

Arthrex has no basis to resist the production of its claim constructions. Indeed, Arthrex *was required to* have construed all of the claim terms as the first step in determining infringement. *Q–Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1300–01 (Fed. Cir. 2004) ("In the context of patent infringement actions, we have interpreted Rule 11 to require, at a

minimum, that an attorney *interpret the asserted patent claims* and compare the accused device with those claims before filing a claim alleging infringement.") (emphasis added); *see also PPS Data*, WL 601208, at *1. Parcus is entitled to discover how Arthrex construed the relevant terms to form its allegations of infringement. *Suncast*, 2008 WL 197648, at *12. Moreover, Arthrex's position that it "objects to this interrogatory [no. 8] because claim construction is a question of law and therefore is not the proper subject of an interrogatory request" (Ex. 2 at 12) is misplaced. Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]"). As part of Arthrex's obligation to provide Parcus with a real claim chart identifying each and every element purportedly present in the accused products, Arthrex must also provide claim constructions so that Parcus has proper notice of what it has been accused of in this case.

## II.     Arthrex's Abject Refusal to Respond to Interrogatory No. 10 Was Improper

*Interrogatory No. 10*

*Identify any and all products that allegedly embody one or more claims of the Arthrex Patents sold by or under license from Arthrex, including an identification of each product and/or act allegedly embodying said claim(s), the date on which each said product was first publicly used or sold; and for each such product and/or act, identify each claim of the Arthrex Patents that Arthrex contends is embodied, and for each such claim, identify in detail on an element-by-element basis (in the form of a claim chart) how each limitation is allegedly satisfied either literally or under the doctrine of equivalents, including an identification of all information, documents, communications and/or things that support, contravene, concern or relate to Arthrex's contention(s).*

Response to Interrogatory No. 10

Arthrex objects to responding to this interrogatory because this interrogatory exceeds the total of 25 interrogatories permitted under Fed. R. Civ. P. 33. The prior interrogatories, including several that include multiple sub-parts, already total 25 interrogatories.

Arthrex had no basis to refuse to respond to Parcus' Interrogatory No. 10. Indeed, Arthrex offered none other than the bare statement that "this interrogatory exceeds the total of 25

- 11 -

interrogatories permitted under Fed. R. Civ. P. 33. The prior interrogatories, including several that include multiple sub-parts, already total 25 interrogatories." *See* Ex. 2 at 14. Under Federal Rule 33(a), "any party may serve upon any other party written interrogatories, not exceeding 25 in number ***including all discrete subparts***." Fed. R. Civ. P. 33(a) (emphasis added). The Eleventh Circuit applies a "related question" test "to determine whether a subpart in an interrogatory should be considered discrete" under Rule 33(a). *See Powell*, 2008 WL 2473748, at *2. "Under the related question test, courts assess whether the subparts are 'logically or factually subsumed within and necessarily related to the primary question.'" *Id.* (citing *Oliver v. City of Orlando,* No. 06-cv-1671, 2007 WL 3232227, at *2 (Oct. 31, 2007)). "An interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question." *Border Collie Rescue, Inc. v. Ryan*, No. 04-cv-568, 2005 WL 662724, at *1 (M.D. Fla. Mar. 15, 2005). Each of Parcus' ten interrogatories (propounded thus far) clearly followed a common theme and any discrete subparts were "logically or factually subsumed within and necessarily related to the primary question." *See Border Collie Rescue,* 2005 WL 662724, at *1, *Oliver*, 2007 WL 3232227, at *2-3 ("[T]he subparts are sufficiently logically related to the information sought in the primary question to be counted as a single interrogatory. If the response to the primary question is affirmative, then the subparts seek, for example, names, addresses, claim numbers, and amounts paid; this is information necessary to properly identify the source of damage or offset.") (internal citations omitted).

Arthrex offered no information regarding how it purportedly tallied Parcus' interrogatories in support of its object to Interrogatory No. 10. Indeed, Arthrex simply declared that the "prior interrogatories, including several that include multiple sub-parts, already total 25 interrogatories" and then refused to answer Interrogatory No. 10. Ex. 2 at 14. Arthrex had no

basis to recalculate and multiply the ten interrogatories served by Parcus into twenty-five requests. Under controlling Eleventh Circuit law Parcus' has only used ten of the twenty-five interrogatories allowed under the Federal Rules. *Powell*, 2008 WL 2473748, at *2; *Oliver*, 2007 WL 3232227, at *3; Fed. R. Civ. P. 33(a)(1). As such, Arthrex should be compelled to respond to Interrogatory No. 10, and Parcus remains entitled to fifteen additional interrogatories.

## CONCLUSION

For the foregoing reasons, Parcus respectfully requests that this Court enter an Order compelling Arthrex to immediately provide supplemental responses to Interrogatory Nos. 1 and 8 and to respond to Interrogatory No. 10 and to preclude Arthrex from interposing any objection(s) thereto. Parcus further requests an Order that the Court has determined that Parcus has only used ten of the twenty-five interrogatory requests allowed under Federal Rule 33(a)(1).

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)

I, Adam P. Samansky, counsel to the moving party, hereby certify that I conferred with opposing counsel concerning the issues addressed in the foregoing Motion to Compel, and we were unable to narrow our differences.

/s/ Adam P. Samansky
Adam P. Samansky

Dated: April 24, 2012                                Respectfully submitted,


/s/ Adam P. Samansky

Alan M. Spiro (*pro hac vice*)
Adam P. Samansky (*pro hac vice*)
Peter J. Cuomo (*pro hac vice*)
**EDWARDS WILDMAN PALMER LLP**
111 Huntington Avenue
Boston, MA  02199-7613
Telephone:	617.239.0100
Facsimile:	617.227.4420

Simeon D. Brier, Florida Bar No. 525782
**EDWARDS WILDMAN PALMER LLP**
525 Okeechobee Blvd., Suit 1600
West Palm Beach, FL 33401
Telephone:	561.833.7700
Facsimile:	561.655.8719


*Attorneys for Defendant,*
*Parcus Medical, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2012, the foregoing Motion to Compel was electronically filed with the Clerk of the Court and also upon all counsel of record identified on the below Service List through CM/ECF.

/s/ Adam P. Samansky
Adam P. Samansky

## SERVICE LIST

Anthony P. Cho (ACho@cgolaw.com)
David L. Atallah (datallah@cgolaw.com)
Todd W. Barrett (tbarrett@cgolaw.com)
Carlson, Gaskey & Olds, P.C.
400 W. Maple Rd., Suite 350
Birmingham, MI 48009
Telephone:  (248) 988-8360

Andrew H. Reiss (ahreiss@napleslaw.com)
CHEFFY PASSIDOMO, P.A.
821 Fifth Avenue South, Suite 201
Naples, Florida  34102
Telephone:  (239) 261-9300