UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| ARTHREX, INC.<br><br>        Plaintiff and Counter-<br>        Defendant,<br><br>v.<br><br>PARCUS MEDICAL, LLC,<br><br>        Defendant and Counter-<br>        Plaintiff, | Civil Action No.  2:11-cv-694-FtM-29SPC<br><br>JURY TRIAL DEMANDED |

**DEFENDANT'S MOTION TO COMPEL SUBSTANTIVE ANSWER
TO DEFENDANT'S INTERROGATORY NO. 11**

Pursuant to Fed. R. Civ. P 37(a) and Local Rule 3.04(a), defendant, Parcus Medical, LLC

("Parcus") respectfully moves this Court for an Order compelling plaintiff, Arthrex, Inc.

("Arthrex") to respond fully, completely and with meaningful specificity, and without objection,

to Parcus' Interrogatory No. 11.

## INTRODUCTION

The pertinent background is detailed in Parcus' Motion to Compel Supplementary

Answers to Interrogatories Nos. 1, 8 and 10 (Doc. 35) and this Court's June 25, 2012 Order

(Doc. 48), incorporated herein by reference.  This memorandum will thus only briefly address

certain additional background.

On March 16, 2012, Parcus served ten interrogatories on Arthrex requiring that Arthrex,

*inter alia*, detail its contentions (i.e. the required good faith basis underlying the allegations in its

pleading) that certain Parcus' products infringed the two asserted patents.  *See* Doc. 35, Ex. 1.

On April 16, 2012, Arthrex purported to respond to nine of the ten interrogatories and refused to answer the tenth, claiming (without reasoning or explanation) that "this interrogatory exceeds the total of 25 interrogatories permitted under Fed. R. Civ. P. 33."  Doc. 35, Ex. 2 at 14; *see* Doc. 48 at 6-7 (holding Arthrex's objection "conclusory in nature and is due to be overruled.").  Thus, while Arthrex brought this case for alleged patent infringement, it failed to support its foundational contention and identify where even a single element of a single claim of either the '451 or '597 patent could be found on any accused Parcus' product.  *See* Doc. 35, Ex. 2 at 5-7 (including Exhibits A&B appended thereto).  In view of Arthrex's incomplete, vague and facially evasive answers, Parcus filed its first motion to compel.  Doc. 35.

Argument advanced in Arthrex's opposition, filed on May 8, 2012 (Doc. 39) made clear that Arthrex had not undertaken a sufficient factual and legal investigation prior to bringing this litigation.  Arthrex flatly state that "Arthrex cannot fully and accurately detail claim charts that show, on an element by element basis, how the accused products meet each feature of the patents in suit until the Court renders its claim construction opinion."  Doc No. 39 at 9.  But a pre-suit investigation requires a "claim interpretation analysis" and "a fact-intensive comparison of the accused product and the asserted claim(s)."  *PPS Data, LLC v. Athenahealth, Inc.*, No. 11–cv–746, 2012 WL 601208, at *1 (M.D. Fla. Feb. 23, 2012).  Thus, in view of the positions Arthrex advanced in its May 8 Opposition, Parcus propounded Interrogatory No. 11 which specifically sought "the basis for, and any analysis undertaken in support of Arthrex's pre-litigation investigation concerning infringement and validity of any asserted claim of the Arthrex Patents . . . ."  Ex. 1 at 4.  But again, Arthrex interposed various boilerplate and meritless objections, and refused to provide any substantive response.  Ex. 2 at 5-6.

On the morning of June 25, 2012, the parties held a meet and confer regarding Arthrex's failure to substantively answer Parcus' Interrogatory No. 11, during which the parties received ECF notice of this Court's Order on Parcus' motion to compel (Doc. 48).  Noting, "[t]he Plaintiff's objections are not well taken," with respect to Arthrex's refusal to substantively respond to Parcus' Interrogatories Nos. 1, 8 and 10, that Order granted Parcus Motion to Compel, holding "[t]he Plaintiff has an obligation to respond fully to the Defendant's interrogatories demanding the Plaintiff to answer questions regarding how the Defendant's products infringe each element of each claim allegedly infringed."  Doc. 48 at 4-5.  After a cursory review of the Order, counsel for Parcus suggested that the parties adjourn the meet and confer to give Arthrex the opportunity to reconsider its refusal to answer Interrogatory No. 11 in view of the Order.  When the meet and confer resumed on June 29, 2012, counsel for Arthrex agreed to provide a "substantive and meaningful" response over its objections (including its privilege objection) to Interrogatory No. 11, but requested until July 25, 2012 to do so.  On a follow-up call held on July 12, 2012, Parcus consented to Arthrex's request to extend the date by which it would supplement its response to July 25, on express condition that Arthrex provide a "substantive and meaningful response" to include at least the claim constructions used in Arthrex's pre-suit investigation.  But Arthrex's July 25, 2012 "supplemental" response provided no claim constructions, no claim charts, and really no "substance" whatsoever:

> **Interrogatory No. 11:**
> *Identify and describe the basis for, and any analysis undertaken in support of Arthrex's pre-litigation investigation concerning infringement and validity of any asserted claim of the Arthrex Patents, including but not limited to: (1) all documents and information Arthrex relied upon in conducting its pre-litigation investigation and upon which it based its decision to sue for infringement of each of the Arthrex Patents; (2) all information Arthrex obtained from viewing, using or testing each accused device; (3) a description of how Arthrex first learned of each accused product and the date(s) on which Arthrex acquired such knowledge; (4) an identification of the person(s) most knowledgeable concerning the pre-*

*litigation investigation and decision to file the instant lawsuit; (5) any construction of any term of any asserted claim of the Arthrex Patents made, used or considered in connection with Arthrex's pre-litigation investigation; and (6) any comparison of the asserted claims of the Arthrex Patents to any accused device made, used or considered in connection with Arthrex's pre-litigation investigation.*

**Response to Interrogatory No. 11:**

Arthrex objects to responding to this interrogatory because Parcus' prior interrogatories, including several that include multiple sub-parts, already exceed the 25 interrogatory limit established by Fed. R. Civ. P. 33(a)(1). This rule expressly states that no more than 25 written interrogatories may be served on any other party unless ordered by the Court. The Court has entered no such order. Arthrex is amenable to a joint motion allowing both parties to serve up to 35 interrogatories.

Arthrex also objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. *See Phillips Electronics v. Universal Electronics*, 892 F. Supp. 108, 110 (D. Del. 1995). Any information sought by Parcus relating to the "analysis undertaken" during Arthrex's pre-litigation investigation is therefore protected from disclosure.

Furthermore, Arthrex objects to this interrogatory because the information sought is not relevant to Parcus' claims or defenses, is not reasonably calculated to lead to the discovery of admissible evidence, and is vague, overly broad and unduly burdensome and oppressive to the extent that it seeks information that is duplicative of information already sought by Parcus and provided by Arthrex. For example, among the other information already provided to Parcus in its responses to Parcus' Interrogatories, Arthrex has detailed the accused products, the dates the infringements began, the asserted claims of the patents-in-suit, and the information and documents that support Arthrex's contentions. Arthrex has also provided infringement claim charts. See Arthrex's objections and responses to Parcus' First Set of Interrogatories, Response to Interrogatory Nos. 1 and 5, Exhibits A through D.

**Supplemental Response to Interrogatory No. 11:**

Arthrex further responds that the information requested by Parcus in this interrogatory is protected from disclosure by the attorney-client privilege and the work product doctrine. Communications from a client to any attorney for the purposes of obtaining legal advice are protected from disclosure by the attorney-client privilege. *See Upjohn Co. v. United States,* 449 U.S. 383, 389-95 (1981). In addition, the work product doctrine is designed to protect from disclosure an attorney's thoughts, mental impressions, opinions, and strategies. *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947). In this regard, Fed. R. Civ. P. 26 protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its

representative," absent a showing of substantial need and undue hardship by the requesting party. Fed. R. Civ. P. 26(b)(3).

In this case, Arthrex's "pre-litigation investigation," and in particular the information requested in subparts (1), (2), (5) and (6) of Interrogatory No. 11, is protected from disclosure by both the attorney-client privilege and the work product doctrine because these subparts seek privileged communications and/or protected mental impressions rather than any underlying facts. More specifically, the information Arthrex relied upon, the information Arthrex obtained, the construction of any term of the Arthrex patents, and any comparison of the asserted claims of the Arthrex patents to any accused device that were made during Arthrex's "pre-litigation investigation" includes not only privileged communications but also information that was specifically prepared for the purposes of this litigation including the metal impressions, thoughts, legal theories, opinions and analyses of Arthrex's outside counsel attorneys. *See, e.g., Medtronic v. Gyrus*, 2006 U.S. Dist. LEXIS 17202 *7-10 (M.D. Fla. 2006). Arthrex will not produce or in any way disclose this protected information to avoid waiving privilege and/or work product protection.

Furthermore, Parcus has not and cannot establish a substantial need and undue hardship for the requested information as required by Fed. R. Civ. P. 26(b)(3). Arthrex has provided Parcus with its infringement contentions that detail Arthrex's positions against Parcus. *See* Supplemental Exhibits A and B of Arthrex's Supplemental Objections and Responses to Defendant's First Set of Interrogatories. This information provides the basis for the infringement claims that have been brought against Parcus, including relevant facts that Arthrex has discovered to date that support its infringement contentions.

Without waiving any of its general or specific objections, Arthrex answers that it first learned of the Series 3 Push-In Suture Anchors, the V-Lox Hybrid Suture Anchors and the VMouth Drill Guide on approximately November 15, 2010 when these products were advertised on Parcus' website. Arthrex first learned of the 8-Point Drill Guide on approximately June 1, 2011 when this product was advertised on Parcus' website. Arthrex first learned of the 45 Knotless Peek CF Suture Anchors on approximately February 2012 when these products were advertised on Parcus' website.

John Schmieding, General Counsel for Arthrex, is the person most knowledgeable concerning the pre-litigation investigation and decision to file the instant lawsuit.

Finally, pursuant to Fed. R. Civ. Pro. 33(d), Arthrex will produce any non-privileged and non-work product protected documents responsive to this interrogatory, to the extent such documents exist and can be located after a reasonable search, at a mutually convenient date and location once the confidentiality agreement the parties have agreed to in principal is entered by the parties.

Ex. 3.[1]

---

[1] Given the length of Arthrex's objections, the meager "answer" provided by Arthrex is shaded for emphasis.

America 17004217

Arthrex's continued bad faith obfuscation of the lack of merit underlying its contentions (if, in fact, it had such any contentions to begin with) is transparent.  The factual basis underlying the foundational contentions for Arthrex's bringing suit is not – and as a matter of law cannot – be privileged or subject to work product protection.  Moreover, Arthrex's failure to abide by its commitment to provide a "substantive and meaningful" response, and Arthrex's continued assertion of "conclusory" objections such as to the number of interrogatories (Doc. 48 at 7), further highlights Arthrex's gamesmanship.[2]  But this is not a game.  Arthrex was required to have undertaken a good faith legal and factual investigation prior to filing this suit.  *Judin v. United States,* 110 F.3d 780, 784 (Fed. Cir. 1997) (Rule 11 requires "that the inquiry [as to whether the accused devices satisfied the claim limitations] be undertaken before the suit is filed, not after.").  And while Arthrex attempted to hide behind its meritless argument that it "cannot fully and accurately detail . . . how the accused products meet each feature of the patents in suit until the Court renders its claim construction opinion," Doc No. 39, Arthrex certainly did not have the benefit of any claim construction rulings from this Court (or Parcus detailed non-infringement and invalidity contentions) when it was duty bound to undertake its pre-suit "claim interpretation analysis" and conduct "a fact-intensive comparison of the accused product and the asserted claim(s).".  *PPS Data, LLC*, 2012 WL 601208, at *1.  Arthrex either failed to undertake a sufficient pre-suit investigation, or is improperly withholding its basis for filing suit.  Either way, Parcus is entitled to an answer.

---

[2] Arthrex's unmeritorious objection that Parcus' first nine interrogatories somehow exceed the twenty-five interrogatory limit under Rule 33 was rejected by the Court in its June 25, 2012 Order, Doc. 48.

**ARGUMENT**

Federal Rule of Civil Procedure 33 permits a party to propound interrogatories which "may relate to any matter that may be inquired into under Rule 26(b)."  Under Rule 26(b), a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  *See Anglin v. Maxim Healthcare Svcs.*, 2009 Dist. LEXIS 34562, at *5 (M.D. Fla. Apr. 3, 2009) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (noting Rule 26 contemplates "any matter that bears on, or that reasonably could lead to other matters that that could bear on, any issue that is or may be in the case.").  Arthrex's complaint alleged that Parcus infringes two of its patents.  Thus, there is no question that the contentions underlying Arthrex's allegations of patent infringement "may be inquired into" via interrogatories under Rule 33.

Arthrex cannot claim that it does not have or need to produce the information Parcus has requested, nor that it is protected by any form of privilege.  Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]").  When it filed the instant action asserting two patents against Parcus, Arthrex was required to have a good faith basis to bring suit, including interpreting the scope of the asserted claims and how the accused products met all of the recited limitations.  Fed. R. Civ. P. 11; *PPS Data,* 2012 WL 601208, at *1 (holding that prior to filing a patent infringement suit "Rule 11 requires a two-step pre-filing analysis: (1) an investigation into the legal basis of the claim of patent infringement (i.e., a pre-filing "claim interpretation analysis"); and (2) *a fact-intensive comparison of the accused product and the asserted claim(s)*.") (emphasis added); *see also Q–Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1300–01 (Fed. Cir. 2004) ("In the context of patent infringement actions, we have interpreted

Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement."); *Judin,* 110 F.3d at 784 (Rule 11 requires "that the inquiry [as to whether the accused devices satisfied the claim limitations] be undertaken before the suit is filed, not after.").  The Federal Circuit explained that:

> A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs -- precisely the scenario Rule 11 contemplates. *Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important.*

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000) (emphasis added).

Parcus is entitled to a detailed description of that basis (if any investigation was made) and an identification of every known supporting document (if any such documents exist). *CareFusion 303, Inc. v. B. Braun Medical Inc.*, No. 8:11-cv-01264, (C.D. Cal. Apr. 6, 2012), Ex. 4, (citing *Tecknowledge Corp. v. Akamai Tech., Inc.*, No. 02-5741-SI, 2004 WL 2480707, at *2 (N.D. Cal. Aug. 10, 2004)); *see also generally, Refac Int'l, Ltd. v. Hitachi, Ltd.*, 921 F.2d 1247, 1253 (Fed. Cir. 1990).

### a.    Interrogatory No. 11 Does Not Seek Privileged Communications

Parcus directed Interrogatory No. 11 to what Arthrex did (or failed to do) in conducting its pre-filing investigation, the type of testing it did (or did not) perform and any conclusions it may have made.  Parcus is "entitled to such information to the extent this interrogatory also asks what [Arthrex] did in conducting its pre-filing investigation, the type of testing it performed, and [Arthrex's] conclusions." *CareFusion 303*, Ex. 4, at 7.  On its face, Interrogatory No. 11 is not asking for "information about any of [Arthrex's] legal strategy that implicates the work-product doctrine or attorney-client privilege." *Id.*  Thus, Arthrex's assertion that identification of "the

information Arthrex relied upon, the information Arthrex obtained, the construction of any term of the Arthrex patents, and any comparison of the asserted claims of the Arthrex patents to any accused device that were made during Arthrex's 'pre-litigation investigation' including not only privileged communications but also information that was specifically prepared for the purposes of this litigation including mental impressions, thoughts, legal theories, opinions and analyses of Arthrex's outside counsel attorneys" (Ex. 1 at 7), is devoid of merit.  It is axiomatic that facts and contentions are not privileged or protected under the work product doctrine: "[t]he [attorney-client] privilege only protects disclosure of communications; ***it does not protect disclosure of underlying facts*** . . . ."  *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (emphasis added); *see also, e.g.*, *CareFusion 303*, Ex. 4;  *Tecknowledge Corp.*, 2004 WL 2480707, at *2.  Similarly, "factual information is not protected by the attorney-client privilege just because it was developed in anticipation of litigation."  *In re Six Grand Jury Witnesses v. Doe*, 979 F.2d 939, 945 (2d Cir. 1992); *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 91 (N.D.N.Y. 2003).

Plaintiffs are required to provide the basis for their claims of patent infringement. *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. 05-8493, 2006 WL 5097360, at *3 (C.D. Cal. Jun. 5, 2006) (quoting *Intertrust Tech. Corp. v. Microsoft Corp.,* No. 01-1640, 2003 WL 23120174, at *1 (N.D. Cal. Dec. 1, 2003) (holding infringement contentions "must reflect 'all facts known to [plaintiff] including those discovered in their Fed. R. Civ. P. 11 pre-filing inquiry,' and contain sufficient detail regarding the plaintiff's theory of infringement 'to provide defendants with notice of infringement' beyond the claim language itself.'"); *see* Doc. 48. Indeed under a substantively similar interrogatory,[3] the Central District of California recently

---

[3] The subject interrogatory in *CareFusion* requested:

   For each Accused Instrumentality, please identify and describe the basis for, and any analysis

ordered a plaintiff-patentee to provide a "supplemental response that provides a more specific description of the nature and type of [plaintiff's] pre-litigation investigation, testing, and conclusions, which must also identify by production number every known supporting document." *CareFusion*, Ex. 4 at 7-8; *see also Perfect Web Techs.*, *Inc. v. Infousa, Inc.,* No. 07-cv-80286, 2008 WL 725726, at *3 (S.D. Fla. Mar. 17, 2008) (rejecting work product doctrine, holding that "[a] factual evidentiary basis [] does not necessarily 'implicate the work product doctrine.'"). Thus, while Arthrex need not provide "information about any of [Arthrex's] legal strategy that implicates the work-product doctrine or attorney-client privilege," Parcus is plainly entitled to a detailed description of the facts and contentions arising out of Arthrex's pre-litigation investigation, if any such investigation was undertaken in the first place.

Arthrex's reliance on *Phillips Elects. v. Universal Elects.*, 892 F. Supp. 108, 110 (D. Del. 1995) is unavailing. In *Phillips*, the District of Delaware considered whether to compel production of documents, including attorney notes, draft licensing agreements and patent infringement investigations, tests or analysis performed by plaintiff's employees for its in-house counsel. The court held that the plaintiff "has not identified for the court exactly what information these documents . . . contain that would bring them within the privilege," and required the plaintiff to submit detailed information in a supplemental filing. *Id.* Here, the issue at hand concerns the identification of factual information underlying the factual contentions

---

undertaken in support of, Your pre-Litigation investigation concerning infringement and validity of each Asserted Claim of the Patents-in-Suit. To be complete, Your response should identify with specificity all documents and information that You relied upon in conducting Your pre-Litigation investigation and upon which You based Your decision to sue for infringement of each of the Patents-in-Suit against each of the Accused Instrumentalities, including all information You obtained from viewing, using  testing each Accused Instrumentality, a description of how You first learned of each Accused Instrumentality, the date(s) upon which You acquired such knowledge, any documents discussing, identifying, describing, referring, or relating to the decision of whether or not and when to bring suit with respect to alleged infringement by the Accused Instrumentalities, and identify the Person(s) most knowledgeable concerning the decision to file the Litigation and response to this Interrogatory.
Ex. 5 at 8-10.

America 17004217

advanced in Arthrex's complaint, not the production of attorney notes or drafts.  *Id.*  To this point, *Phillips* held that "protection may not be applicable to ***facts*** incorporated in the documents.  Thus, while the draft licensing agreements may be privileged, ***the facts . . . may not be privileged***."  *Id.* (citing *Upjohn*, 449 U.S. at 395-96) (emphasis added).  Thus, *Philips* dispatches Arthrex's refusal to even identify "all documents and information Arthrex relied upon in conducting its pre-litigation investigation and upon which it based its decision to sue for infringement of each of the Arthrex Patents."  Ex. 1 at 5.  And to the extent Arthrex is claiming privilege, it must not only identify each document withheld from discovery, it must identify: "(1) the nature of the confidential communication, if any, from the client that would be disclosed in discovery; (2) the nature of the advice, if any, that would be disclosed upon production of the document; and (3) a []statement by the plaintiff as to why, in light of these facts, the document falls within the privilege.  892 F. Supp. at 110.

Arthrex's reliance on *Medtronic v. Gyrus,* 2006 U.S. Dist. LEXIS 17202 *7-10 (M.D. Fla. 2006) is similarly misplaced.  Like *Phillips*, *Medtronic* also addressed a motion to compel production of a document allegedly protected under the work-product doctrine.  *See generally*, *id.*  This "contested document," referred to in the testimony of a Rule 30(b)(6) designee reflected "an attorney's mental impressions, conclusions, opinions, and legal theories."  *Id.* at *9-10.  And, "[n]otably, Defendant d[id] not argue that the contested document is not work product."  *Id.* at 10.  Such is not the case here.  Parcus' Interrogatory No. 11 does not seek work product, it seeks only "factual evidence," which the *Medtronic* court held was readily "discoverable."  *See id.* at 3.

>    b.      **The Information Sought Through Interrogatory No. 11 is Clearly Relevant**

Arthrex's objection that "the information sought is not relevant to Parcus' claims or defenses, is not reasonably calculated to lead to the discovery of admissible evidence, and is

vague, overly broad and unduly burdensome and oppressive . . . " is unsubstantiated and wholly

meritless.  *See Gober v. City of Leesburg,* 197 F.R.D. 519, 521 (M.D. Fla. 2000) ("The party

resisting production of information bears the burden of establishing lack of relevancy or undue

burden in supplying the requested information");  *Coker v. Duke & Co.,* 177 F.R.D. 682, 686

(M.D. Ala. 1998) ("[A]n objection must show specifically how a discovery request is overly

broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the

nature of the burden .").  Arthrex's pre-suit investigation and conclusions concerning the

foundational allegation in Arthrex's complaint, *viz*, alleged patent infringement, is clearly

relevant to the claims and defenses at issue.  *See Samsung SDI Co.*, 2006 WL 5097360, at *3

(holding infringement contentions "must reflect 'all facts known to [the plaintiff] including those

discovered in their Fed. R. Civ. P. 11 pre-filing inquiry. . . .'")).

Nor is the Interrogatory "duplicative of information already sought by Parcus and

provided by Arthrex" in response to Parcus' Interrogatories Nos. 1 and 5.  Doc. 35, Ex. 1.

Interrogatory No. 11 is specific as to what if anything was done as part of Arthrex's pre-suit

investigation – subject matter that is clearly not addressed in Arthrex's responses to

Interrogatories Nos. 1 or 5.  Without the "the claim interpretation that Plaintiff used when it

compared the elements of the asserted claims to Defendant's [product]" it was "largely

unknowable . . . whether it was reasonable for counsel to have concluded that the identified

functionally satisfied the as-interpreted element."  *PPS Data, LLC*, 2012 WL 601208, at *1; *see*

*Mee Industries v. Dow Chemical Co.,* 608 F.3d 1202, 1212 (11th Cir. 2010) (noting "the initial

step for any patentee contemplating the filing of an infringement suit is to perform a reasonable

claim construction.  This step is rather obvious; without a clear identification of the limitations of

one's own patent claim, one could not possibly make a judgment about possible infringement.");

*see also Suncast Techs., L.L.C. v. Patrician Prods., Inc.*, No. 07-cv-80414, 2008 WL 179648

(M.D. Fla. 2008) (holding contention interrogatories seeking plaintiff's claim construction

"permissible and appropriate.") (collecting cases and Local Rules); Doc. 48.

Arthrex's failure to comply with its Rule 11 obligations is squarely at issue:

> ***In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.*** Failure to do so should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances.

*View Eng'g,* 208 F.3d at 986 (emphasis added).  Here, Arthrex's asserted "inability to fully

respond to discovery requests raise[s] at least the suspicion that the action was originally filed in

violation of Rule 11."  *Refac Int'l, Ltd.,* 921 F.2d at 1253; *see also, e.g.*, Doc. 44 at 2 (stating

"*Arthrex cannot fully and accurately detail claim charts* that include an 'identification of each

element of the allegedly infringed claim in the accused instrumentality' *until the Court renders

its claim construction opinion*.")[4] (emphasis added).  This Court should, therefore, Order Arthrex

to fully answer Interrogatory 11 without delay or objection.

---

[4] Arthrex's argument it cannot provide an "'identification of each element of the allegedly infringed claim in the accused instrumentality' *until the Court renders its claim construction opinion*" necessarily implicates Arthrex's failure to construe the claims, and thus undertake a sufficient infringement analysis prior to filing this suit.  *Mee Industries,* 608 F.3d at 1212.

- 13 -

## <u>CONCLUSION</u>

For the foregoing reasons, Parcus respectfully requests that this Court enter an Order compelling Arthrex to immediately provide responses to Interrogatory No. 11, and preclude Arthrex from interposing any objection(s) thereto.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)</u>

I, Adam P. Samansky, counsel to the moving party, hereby certify that I conferred with opposing counsel concerning the issues addressed in the foregoing Motion to Compel on June 29, 2012 and July 12, 2012, and we were unable to narrow our differences.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 3.01(j), Parcus respectfully requests this Court grant oral argument on this motion.

America 17004217

Dated: July 27, 2012                           Respectfully submitted,


                                               _/s/ Adam P. Samansky_____

                                               Alan M. Spiro (*pro hac vice*)
                                               Adam P. Samansky (*pro hac vice*)
                                               Peter J. Cuomo (*pro hac vice*)
                                               **EDWARDS WILDMAN PALMER LLP**
                                               111 Huntington Avenue
                                               Boston, MA  02199-7613
                                               Telephone:        617.239.0100
                                               Facsimile:        617.227.4420

                                               Simeon D. Brier, Florida Bar No. 525782
                                               **EDWARDS WILDMAN PALMER LLP**
                                               525 Okeechobee Blvd., Suit 1600
                                               West Palm Beach, FL 33401
                                               Telephone:        561.833.7700
                                               Facsimile:        561.655.8719


                                               *Attorneys for Defendant,*
                                               *Parcus Medical, LLC*

America 17004217

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2012, the foregoing Motion to Compel was electronically filed with the Clerk of the Court using CM/ECF and was also served upon all counsel of record identified on the below Service List through CM/ECF.

 /s/ Adam P. Samansky
Adam P. Samansky

## SERVICE LIST

Anthony P. Cho (ACho@cgolaw.com)
David L. Atallah (datallah@cgolaw.com)
Todd W. Barrett (tbarrett@cgolaw.com)
Carlson, Gaskey & Olds, P.C.
400 W. Maple  Rd., Suite 350
Birmingham, MI 48009
Telephone:  (248) 988-8360

Andrew H. Reiss (ahreiss@napleslaw.com)
CHEFFY PASSIDOMO, P.A.
821 Fifth Avenue South, Suite 201
Naples, Florida   34102
Telephone:  (239) 261-9300