**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**ARTHREX, INC.,**

    **Plaintiff,**

**V.**                                                                   **Case No:  2:11-cv-694-FtM-29SPC**

**PARCUS MEDICAL, LLC,**

    **Defendant.**
_____/

**ORDER**

This matter comes before the Court on Defendant's Motion to Compel Substantive Answer to Defendant's Interrogatory No. 11 (Doc. #54) filed on July 27, 2012. Plaintiff Arthrex's Response to Defendant's Motion to Compel Substantive Answer to Defendant's Interrogatory No. 11 (Doc. #68) was filed on August 18, 2012. Thus, the Motion is ripe for the Court's review.

The Federal Rules state that, a party upon whom interrogatories have been served has 30 days to respond either by filing answers or objections to the propounded interrogatories. Fed. R. Civ. P. 33(b). If the serving party does not receive a response to their interrogatories, then the serving party may request an order compelling disclosure. Fed. R. Civ. P. 37(a). Whether or not to grant the motion to compel is at the discretion of the trial court. Commercial Union Insurance Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984).

On December 15, 2010, Arthrex filed its complaint alleging that Parcus infringed two patents: United States Patent No. 5,993,451 ("the '451 patent") entitled "Cannulated Suture Anchor Drill Guide" and United States Patent No. 6,641,597 ("the '597 patent") entitled

Interference Fit Knotless Suture Anchor Fixation. In its complaint, Arthrex alleged that Parcus' infringement of the '451 patent included but was not limited to Parcus' VMouth Drill Guide (Part No. 10330) and 8-Point Drill Guide (Part No. 10446) instrumentation, and that Parcus' infringement of the '597 patent included but was not limited to Parcus' Series 3 Suture Anchors (Part Nos. 10323T and 10313) and Parcus' V-LoX Hybrid Suture Anchors (Part No. 10354T). Arthrex further alleged that the purported infringement was "deliberate" and "willful" and requests treble damages and attorney fees and costs pursuant to 35 U.S.C. §285.

On May 11, 2012, Defendant served Plaintiff with its second set of interrogatories. (Doc. #54-1). Interrogatory No. 11 asks the Plaintiff to:

> Identify and describe the basis for, and any analysis undertaken in support of Arthrex's pre-litigation investigation concerning infringement and validity of any asserted claim of the Arthrex Patents, including but not limited to: (1) all documents and information Arthrex relied upon in conducting its pre-litigation investigation and upon which it based its decision to sue for infringement of each of the Arthrex Patents; (2) all information Arthrex obtained from viewing, using or testing each accused device; (3) a description of how Arthrex first learned of each accused product and the date(s) on which Arthrex acquired such knowledge; (4) an identification of the person(s) most knowledgeable concerning the pre-litigation investigation and decision to file the instant lawsuit; (5) any construction of any term of any asserted claim of the Arthrex Patents made, used or considered in connection with Arthrex's pre-litigation investigation; and (6) any comparison of the asserted claims of the Arthrex Patents to any accused device made, used or considered in connection with Arthrex's pre-litigation investigation.

(Doc. #54-1).

On June 11, 2012, Plaintiff served its responses and objections to the interrogatories. Plaintiff Response to Interrogatory No. 11 stated:

> Arthrex objects to responding to this interrogatory because Parcus' prior interrogatories, including several that include multiple sub-parts, already exceed the 25 interrogatory limit established by Fed. R. Civ. P. 33(a)(1). This rule expressly states that no more than 25 written interrogatories may be served on any other party unless ordered by the Court. The Court has entered no such order.

> Arthrex is amenable to a joint motion allowing both parties to serve up to 35 interrogatories. Arthrex also objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. *See* Phillips Electronics v. Universal Electronics, 892 F. Supp. 108, 110 (D. Del. 1995). Any information sought by Parcus relating to the "analysis undertaken" during Arthrex's pre-litigation investigation is therefore protected from disclosure.
>
> Furthermore, Arthrex objects to this interrogatory because the information sought is not relevant to Parcus' claims or defenses, is not reasonably calculated to lead to the discovery of admissible evidence, and is vague, overly broad and unduly burdensome and oppressive to the extent that it seeks information that is duplicative of information already sought by Parcus and provided by Arthrex. For example, among the other information already provided to Parcus in its responses to Parcus' Interrogatories, Arthrex has detailed the accused products, the dates the infringements began, the asserted claims of the patents-in-suit, and the information and documents that support Arthrex's contentions. Arthrex has also provided infringement claim charts. See Arthrex's objections and responses to Parcus' First Set of Interrogatories, Response to Interrogatory Nos. 1 and 5, Exhibits A through D.

(Doc. #54-2).

Counsel for both parties met and conferred to discuss discovery matters, whereupon counsel for Plaintiff agreed to supplement Plaintiff's response to Interrogatory No. 11. On July 25, 2012, Plaintiff served Defendant with its Supplemental Objections and Responses to Defendant's Second Set of Interrogatories. Plaintiff's Supplemental Response to Interrogatory No. 11 stated:

> Arthrex further responds that the information requested by Parcus in this interrogatory is protected from disclosure by the attorney-client privilege and the work product doctrine. Communications from a client to any attorney for the purposes of obtaining legal advice are protected from disclosure by the attorney-client privilege. *See* Upjohn Co. v. United States, 449 U.S. 383, 389-95 (1981). In addition, the work product doctrine is designed to protect from disclosure an attorney's thoughts, mental impressions, opinions, and strategies. See Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495, 511-12 (1947). In this regard, Fed. R. Civ. P. 26 protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or

its representative," absent a showing of substantial need and undue hardship by the requesting party. Fed. R. Civ. P. 26(b)(3).

In this case, Arthrex's "pre-litigation investigation," and in particular the information requested in subparts (1), (2), (5) and (6) of Interrogatory No. 11, is protected from disclosure by both the attorney-client privilege and the work product doctrine because these subparts seek privileged communications and/or protected mental impressions rather than any underlying facts. More specifically, the information Arthrex relied upon, the information Arthrex obtained, the construction of any term of the Arthrex patents, and any comparison of the asserted claims of the Arthrex patents to any accused device that were made during Arthrex's "pre-litigation investigation" includes not only privileged communications but also information that was specifically prepared for the purposes of this litigation including the metal impressions, thoughts, legal theories, opinions and analyses of Arthrex's outside counsel attorneys. *See, e.g.,* Medtronic v. Gyrus, 2006 U.S. Dist. LEXIS 17202 *7-10 (M.D. Fla. 2006). Arthrex will not produce or in any way disclose this protected information to avoid waiving privilege and/or work product protection.

Furthermore, Parcus has not and cannot establish a substantial need and undue hardship for the requested information as required by Fed. R. Civ. P. 26(b)(3). Arthrex has provided Parcus with its infringement contentions that detail Arthrex's positions against Parcus. See Supplemental Exhibits A and B of Arthrex's Supplemental Objections and Responses to Defendant's First Set of Interrogatories. This information provides the basis for the infringement claims that have been brought against Parcus, including relevant facts that Arthrex has discovered to date that support its infringement contentions.

Without waiving any of its general or specific objections, Arthrex answers that it first learned of the Series 3 Push-In Suture Anchors, the V-Lox Hybrid Suture Anchors and the VMouth Drill Guide on approximately November 15, 2010 when these products were advertised on Parcus' website. Arthrex first learned of the 8-Point Drill Guide on approximately June 1, 2011 when this product was advertised on Parcus' website. Arthrex first learned of the 45 Knotless Peek CF Suture Anchors on approximately February 2012 when these products were advertised on Parcus' website.

John Schmieding, General Counsel for Arthrex, is the person most knowledgeable concerning the pre-litigation investigation and decision to file the instant lawsuit.

Finally, pursuant to Fed. R. Civ. Pro. 33(d), Arthrex will produce any nonprivileged and non-work product protected documents responsive to

4

>	this interrogatory, to the extent such documents exist and can be located after a reasonable search, at a mutually convenient date and location once the confidentiality agreement the parties have agreed to in principal is entered by the parties.

(Doc. #54-3).

Defendant argues that Plaintiff's response to Interrogatory No. 11 failed to provide a "substantive and meaningful" response over its objections in its Supplemental Response to Interrogatory No. 11. Specifically, Defendant argues that Plaintiff's supplemental response failed to provide claim constructions, claim charts and substance. As grounds, Plaintiff responds that the information requested in Interrogatory No. 11 is privileged and subject to work product protection.

Plaintiff has provided a response to subparts (3) and (4) of Interrogatory No. 11. As such, Defendant's Motion is denied as to these subparts. However, at issue is the information requested in subparts (1), (2), (5) and (6) of Interrogatory No. 11. Plaintiff has failed to respond to subparts (1), (2), (5) and (6) of Interrogatory No. 11. Plaintiff states that these documents are privileged and subject to work product protection. These subparts in pertinent part request:

>	(1) [A]ll documents and information Arthrex relied upon in conducting its pre-litigation investigation and upon which it based its decision to sue for infringement of each of the Arthrex Patents; (2) all information Arthrex obtained from viewing, using or testing each accused device, . . . . (5) any construction of any term of any asserted claim of the Arthrex Patents made, used or considered in connection with Arthrex's pre-litigation investigation; and (6) any comparison of the asserted claims of the Arthrex Patents to any accused device made, used or considered in connection with Arthrex's pre-litigation investigation.

The Court finds the information in subparts (1), (2), (5) and (6) relevant and necessary in order for Defendant's assessment of the claims filed against it. View Eng'g, Inc. v. Robotic Vision Sys., Inc., 208 F.3d 981, 986 (Fed. Cir. 2000) (holding that performing a pre-filing assessment of the basis of each infringement claim is . . . extremely important. In bringing a claim of

infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement).

The Plaintiff has asserted that the information is protected by privilege or work product. While attorney impressions are not discoverable, the factual basis including documents and actions looked into by the Plaintiff in its pre-litigation investigation are discoverable because the Plaintiff is required to provide a factual basis for their claims. Samsung SDI Co. v. Matsushita Elec. Indus., Inc., 2006 WL 5097360 * 3 (C.D. Cal. June 5, 2006). Thus, the Defendant is clearly entitled to a detailed description of the facts and contentions relied upon by the Plaintiff in conducting its pre-litigation discovery.

If there are mental notes or impressions written on any of the documents the Plaintiff may redact those notes or impressions from the documents. As a reminder, the Plaintiff is cautioned that it is the party invoking the privilege bears the burden of proof. Tyne v. Time Warner Entm't Co., L.P., 212 F.R.D. 596, 599 (M.D. Fla. 2002). "This burden can be met only by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory or *ipse dixit* assertions." CSX Transp., Inc., v. Admiral Ins. Co., 1995 WL 855421 *1 (M.D. Fla. July 20, 1995) (internal quotes omitted). Pursuant to Fed. R. Civ. P. 26(b)(3) & (5) this evidence is generally provided through the use of a privilege log. Typically, the privilege log will identify each document and the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is properly claimed. Id. at *3. More specifically, a proper privilege log should contain the following information:

> (1) the name and job title or capacity of the author of the document;
> (2) the name and job title or capacity of each recipient of the document;

>    (3) the date the document was prepared and if different, the date(s) on which it was sent to or shared with persons other than the author(s);
>    (4) the title and description of the document;
>    (5) the subject matter addressed in the document;
>    (6) the purpose(s) for which it was prepared or communicated; and
>    (7) the specific basis for the claim that it is privileged.

See Roger Kennedy Constr., Inc. v. Amerisure Ins. Co., 2007 WL 1362746 * 1 (M.D. Fla. May 7, 2007) (detailing the information needed in a proper privilege log).  As such, Plaintiff must produce a privilege log for any documents it claims privilege on.  If the documents requested are not protected under privilege or work-product, Plaintiff must product the documents.  Therefore, Defendant's request to subparts (1), (2), (5) and (6) of Interrogatory No. 11 is granted.  Plaintiff shall have 20 days to provide the requested documents.  If Plaintiff asserts that any documents are privileged, confidential, or work-product, a proper privilege log shall be produced in 20 days, as well.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Compel Substantive Answer to Defendant's Interrogatory No. 11 (Doc. #54) is **GRANTED in part and DENIED in part**.

> (1) Defendant's Motion to compel subparts (3) and (4) of Interrogatory No. 11 is **DENIED.**
>
> (2) Defendant's Motion to Compel subparts (1), (2), (5), and (6) of Interrogatory No. 11 is **GRANTED**.  Plaintiff shall provide the requested documents by **September 20, 2012.** If Plaintiff assets that any documents are privileged, confidential, or work-product, a proper privilege log shall be produced by this date.
>
> (3) Defendant's request for an oral argument on this Motion is **DENIED**.

7

**DONE** and **ORDERED** in Fort Myers, Florida this 31st day of August, 2012.

/s/ Sheri Polster Chappell
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record