**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

ARTHREX, INC.,

Plaintiff,

v. Case No: 2:11-cv-694-FtM-29SPC

PARCUS MEDICAL, LLC,

Defendant.
___________________________________/

**ORDER**

This matter comes before the Court on Defendant's Motion for Sanction of Dismissal for Plaintiff's Violation of the Court's Order (Doc. # 83) by its Failure to Substantively Answer Defendant's Interrogatory No. 11 (Doc. # 103), filed on October 2, 2012. Plaintiff filed its Response to Defendant's Motion for Sanction of Dismissal (Doc. # 114) on October 16, 2012. The Motion is fully briefed and ripe for the Court's review.

**FACTUAL BACKGROUND**

The underlying case relates to claims regarding patent infringement. On May 11, 2012, Defendant served Plaintiff with its second set of interrogatories. (Doc. # 54–1). Interrogatory No. 11 asked Plaintiff to:

> Identify and describe the basis for, and any analysis undertaken in support of Arthrex's pre-litigation investigation concerning infringement and validity of any asserted claim of the Arthrex Patents, including but not limited to: (1) all documents and information Arthrex relied upon in conducting its pre-litigation investigation and upon which it based its decision to sue for infringement of each of the Arthrex Patents; (2) all information Arthrex obtained from viewing, using or testing each accused device; (3) a description of how Arthrex first learned of each accused product and the date(s) on which Arthrex acquired such knowledge; (4) an identification of the person(s) most knowledgeable concerning the pre-litigation investigation and decision to file the instant lawsuit; (5) any construction of any term of any asserted claim of the Arthrex Patents made, used or considered in connection with Arthrex's pre-litigation investigation; and (6)

> any comparison of the asserted claims of the Arthrex Patents to any accused device made, used or considered in connection with Arthrex's pre-litigation investigation.

Doc. # 54–1, p. 5). On June 11, 2012, Plaintiff served its responses and objections to the interrogatories. (Doc. # 54–2). Plaintiff's Response to Interrogatory No. 11 stated:

> Arthrex objects to responding to this interrogatory because Parcus' prior interrogatories, including several that include multiple sub-parts, already exceed the 25 interrogatory limit established by Fed. R. Civ. P. 33(a)(1). This rule expressly states that no more than 25 written interrogatories may be served on any other party unless ordered by the Court. The Court has entered no such order. Arthrex is amenable to a joint motion allowing both parties to serve up to 35 interrogatories.
>
> Arthrex also objects to this interrogatory to the extent that it seeks information that is protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. *See Phillips Electronics v. Universal Electronics*, 892 F. Supp. 108, 110 (D. Del. 1995). Any information sought by Parcus relating to the "analysis undertaken" during Arthrex's pre-litigation investigation is therefore protected from disclosure.
>
> Furthermore, Arthrex objects to this interrogatory because the information sought is not relevant to Parcus' claims or defenses, is not reasonably calculated to lead to the discovery of admissible evidence, and is vague, overly broad and unduly burdensome and oppressive to the extent that it seeks information that is duplicative of information already sought by Parcus and provided by Arthrex. For example, among the other information already provided to Parcus in its responses to Parcus' Interrogatories, Arthrex has detailed the accused products, the dates the infringements began, the asserted claims of the patents-in-suit, and the information and documents that support Arthrex's contentions. Arthrex has also provided infringement claim charts. See Arthrex's objections and responses to Parcus' First Set of Interrogatories, Response to Interrogatory Nos. 1 and 5, Exhibits A through D.

(Doc. # 54–2, pp. 5–6).

Unsatisfied with Plaintiff's Response, Counsel for each party conferred, resulting in Plaintiff serving a Supplemental Response to Interrogatory No. 11 on July 25, 2011. (Doc. # 54–3). Plaintiff's Supplemental Response to Interrogatory No. 11 stated:

> Arthrex further responds that the information requested by Parcus in this interrogatory is protected from disclosure by the attorney-client privilege and the work product doctrine. Communications from a client to any attorney for the purposes of obtaining legal advice are protected from disclosure by the attorney-client privilege. *See* Upjohn Co. v. United States, 449 U.S. 383, 389-95 (1981). In addition, the work product doctrine is designed to protect from disclosure an attorney's thoughts, mental impressions, opinions, and strategies. See Fed. R. Civ. P.

26(b)(3); Hickman v. Taylor, 329 U.S. 495, 511-12 (1947). In this regard, Fed. R. Civ. P. 26 protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative," absent a showing of substantial need and undue hardship by the requesting party. Fed. R. Civ. P. 26(b)(3).

In this case, Arthrex's "pre-litigation investigation," and in particular the information requested in subparts (1), (2), (5) and (6) of Interrogatory No. 11, is protected from disclosure by both the attorney-client privilege and the work product doctrine because these subparts seek privileged communications and/or protected mental impressions rather than any underlying facts. More specifically, the information Arthrex relied upon, the information Arthrex obtained, the construction of any term of the Arthrex patents, and any comparison of the asserted claims of the Arthrex patents to any accused device that were made during Arthrex's "pre-litigation investigation" includes not only privileged communications but also information that was specifically prepared for the purposes of this litigation including the metal impressions, thoughts, legal theories, opinions and analyses of Arthrex's outside counsel attorneys. *See, e.g.*, Medtronic v. Gyrus, 2006 U.S. Dist. LEXIS 17202 *7-10 (M.D. Fla. 2006). Arthrex will not produce or in any way disclose this protected information to avoid waiving privilege and/or work product protection.

Furthermore, Parcus has not and cannot establish a substantial need and undue hardship for the requested information as required by Fed. R. Civ. P. 26(b)(3). Arthrex has provided Parcus with its infringement contentions that detail Arthrex's positions against Parcus. See Supplemental Exhibits A and B of Arthrex's Supplemental Objections and Responses to Defendant's First Set of Interrogatories. This information provides the basis for the infringement claims that have been brought against Parcus, including relevant facts that Arthrex has discovered to date that support its infringement contentions.

Without waiving any of its general or specific objections, Arthrex answers that it first learned of the Series 3 Push-In Suture Anchors, the V-Lox Hybrid Suture Anchors and the VMouth Drill Guide on approximately November 15, 2010 when these products were advertised on Parcus' website. Arthrex first learned of the 8-Point Drill Guide on approximately June 1, 2011 when this product was advertised on Parcus' website. Arthrex first learned of the 45 Knotless Peek CF Suture Anchors on approximately February 2012 when these products were advertised on Parcus' website.

John Schmieding, General Counsel for Arthrex, is the person most knowledgeable concerning the pre-litigation investigation and decision to file the instant lawsuit.

Finally, pursuant to Fed. R. Civ. Pro. 33(d), Arthrex will produce any nonprivileged and non-work product protected documents responsive to this interrogatory, to the extent such documents exist and can be located after a reasonable search, at a mutually convenient date and location once the confidentiality agreement the parties have agreed to in principal is entered by the parties.

(Doc. # 54–3, pp. 6–7).

Again unsatisfied with this response, Defendant filed a Motion to Compel Substantive Answer to Defendant's Interrogatory No. 11 (Doc. # 54) on July 27, 2012. This Court granted Defendant's Motion in part and denied in part, ordering Plaintiff to answer subparts (1), (2), (5), and (6) of Interrogatory No. 11. (*See* Doc. # 83). The Court held that the information requested within these subparts was relevant and if Plaintiff claimed that any of the information was privileged, confidential, or work-product, it must produce a privilege log. (*See* Doc. # 83).

Pursuant to the Court's August 31, 2012 Order, Plaintiff filed its Second Supplemental Response to Interrogatory No. 11. (Doc. # 103–1) on September 20, 2012. Plaintiff's Second Supplemental Response to Interrogatory No. 11 stated:

> Pursuant to the Court's August 31, 2012 Order (Dkt. No. 83), Arthrex states that it relied on the following documents and information in conducting its pre-litigation investigation related to Parcus' patent infringement:
>
> - The patents-in-suit (i.e., the '451 and '597 patents)
> - The prosecution histories of the patents-in-suit (including the prior art cited
> - during prosecution of the patents-in-suit)
> - Parcus' product catalog (available on www.parcusmedical.com)
> - Parcus' directions for use for the accused products (available
> - on www.parcusmedical.com)
> - Parcus' "Tech Guides" for the accused products (available
> - on www.parcusmedical.com)
> - Product descriptions and other general information related to the accused products Physical samples of Parcus' Series 3 anchors and V-Mouth Drill Guide
> - Various patents and printed publications
>
> The documents Arthrex relied on to conduct its pre-suit investigation have been produced to Parcus concurrently with these supplemental responses. These documents bear bates numbers ARPC-000001 through ARPC-000634. These documents and things provide the factual basis for Arthrex's patent claims against Parcus.
>
> In particular, Arthrex compared the accused products with the claims of the patents-in-suit. This comparison resulted in a determination that the accused products embodied features required by the claims and therefore read on one or more claims of each of the patents-in-suit. Arthrex believed that the words of the patents-in-suit were susceptible to their everyday meaning and the everyday

> meaning of the claim terms was therefore utilized in connection with Arthrex's pre-litigation investigation.
>
> Any investigation made by Arthrex's outside counsel attorneys is protected by the attorney-client privilege and/or the work product doctrine. A privilege log describing the documents protected by privilege and/or work product is submitted concurrently herewith. (available on www.parcusmedical.com)

(Doc. # 103–1, p. 8–9). Defendant now brings this Motion for Sanction of Dismissal contending that Plaintiff's Response did not comply with the Court's Order and justifies the imposition of sanctions. (Doc. # 103).

**DISCUSSION**

Defendant contends that sanctions should be imposed against Plaintiff under Fed. R. Civ. P. 37(b) as a result of Plaintiff's failure to comply with this Court's Order Granting in part Defendant's Motion to Compel Substantive Answer to Defendant's Interrogatory No. 11. (Doc. # 83). Specifically, Defendant contends that Plaintiff's response provided pursuant to the Court's Order was an *ex post facto* fabrication of the purported basis for its pre-litigation investigation and demonstrates bad faith and a willful disregard for the Court's Order, thus supporting the imposition of sanctions.

The Defendant argues that sanctions are appropriate in this instance on two grounds. First that the Plaintiff provided false information in response to Interrogatory Number 11 and second that information provided failed to provide a detailed description of the pre-suit investigation was directed by the Court.

Federal Rules of Civil Procedure 37 provides that if a party must seek relief from the Court to Compel a recalcitrant party to respond the moving party may be awarded reasonable expenses including attorney's fees incurred in compelling the responses. Rule 37 is enforced in this district. Middle District Discovery (2001) at 3. Further, if a Court Order is obtained

compelling discovery, unexcused failure to comply with such an order is treated by the Court with special gravity and disfavor. Id.

Under Fed. R. Civ. P. 37, sanctions include:

> (1) directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (3) striking pleadings in whole or in part;
> (4) staying further proceedings until the order [to compel] is obeyed;
> (5) dismissing the action or proceeding in whole or in part;
> (6) rendering a default judgment against the disobedient party; or
> (7) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii). Further instead of or in addition to the sanctions listed above, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

*(1) Whether the Plaintiff Fabricated Presuit Information*

Defendant asserts that some of the documents produced by Plaintiff with its response to Interrogatory No. 11 did not exist at that time Plaintiff conducted its pre-suit investigation, and that such misconduct is false and willfully misleading, thus supporting the imposition of sanctions. (Doc. # 103, pp. 6–8).

Approximately twenty (20) out of the 634 documents produced with Arthrex's supplemental response to Interrogatory No. 11 (or 1/32 of the documents produced) did not exist at the time of the pre-suit investigation, and in fact did not come into existence until after Arthrex filed its Complaint. (Doc. # 103, p. 7). The Plaintiff acknowledges that some of the documents didn't exist at the time of filing of the Complaint. The Plaintiff states that three of the documents

relate to Parcus' Knotless PEEK CF Push-In Suture Anchor, which did not even exist at the time of the original complaint, yet were included in order to provide the factual basis as to why the device was added to the case. (Doc. # 114, p. 6). Another document included related to Parcus' MiTi Suture Anchor, which was investigated but not included as part of any claim infringement. (Doc. # 114, p. 6).

Here, the Court finds that the inclusion of some of the documents that did not exist prior to the filing of the Complaint was justified and not done with the intent to mislead or to willfully provide false information. The remainder of the documents included that may not have existed prior to the filing of this suit could have resulted from a mere clerical error. Without any further evidence of intent to mislead the Court or to willfully provide false information, the Court will not impose the severe sanction of dismissal.

*(2) Whether the Information Provided Complied with the Court's Order*

The Defendant states that the Plaintiff failed to provide detailed responses to Interrogatory Number 11 as required by the Court's Order compelling the information. (Doc. # 103, p. 9–14). In determining whether or not Plaintiff failed to comply with the Court's Order, the Court must first determine whether the answers that Defendant contends are insufficient would have been enough to satisfy the patent pre-suit investigation requirement that is the subject of Interrogatory Number 11. This Court finds that the necessary steps in conducting a pre-filing investigation of patent infringement are not very stringent. *See* Q-Pharma, Inc., 360 F. 3d at 1301–02 (rejecting the argument that a pre-filing infringement analysis which relied solely on the defendant's advertising statements was inadequate). At a minimum, Courts have required that prior to filing a claim alleging infringement, that "an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging

infringement." *See* PPS Data, LLC v. Athenahealth, Inc., 2010 WL 601208, at *1 (M.D. Fla. 2012) (citing Q-Pharma, 360 F. 3d at 1300–01 (Fed. Cir. 2004)). The Defendant's Motion contends that the pre-suit investigation standard is much higher than it actually is.

Based upon the Plaintiff's Response to Interrogatory No. 11, it appears that Plaintiff conducted a sufficient pre-suit investigation prior to filing its patent infringement claims. In Plaintiff's Response pursuant to the Court's Order, Arthrex describes the process in which it compared the accused's products with the claims of the patents-in-suit and which led it to the conclusion that there was an adequate basis for believing that Parcus Medical had infringed on the patents at issue in this case. (Doc. # 114, p. 4). Specifically, Plaintiff states that it relied on the following documents in conducting its pre-litigation investigation: the patents-in-suit, the prosecution histories of both patents, Parcus' production catalog's, its instruction on the use of the accused products, technical guides produced by Parcus for the accused products, product description and other information relating to the accused products. (Doc. # 114, p. 4). Arthrex also produced hundreds of pages of documents supporting its factual basis for asserting infringement. (Doc. # 114, p. 4). Further, Arthrex also states that it relied on Parcus' website, which contained much of the information on the product and its use. (Doc. # 114, p. 4). Arthrex also inspected physical samples of Parcus' product. (Doc. # 114, p. 4). Ultimately, Arthrex claims that these documents, the website, Arthrex's patents and samples of Parcus' products formed the factual and evidentiary foundation for Arthrex's claim of patent infringement.

This Court finds that Plaintiff's response regarding the steps taken in conducting its pre-suit investigation prior to filing suit are sufficient to meet what is required of a party in a pre-suit investigation.

Based upon the foregoing, this Court finds that Plaintiffs did not intentionally fabricate the presuit information. Further, Plaintiffs provided a response to interrogatory number 11 that complied with the Court's August 31, 2012 Order.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Sanction of Dismissal for Plaintiff's Violation of the Court's Order (Doc. 83) by its Failure to Substantively Answer Defendant's Interrogatory No. 11 (Doc. #103) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 1st day of November, 2012.

Sheri Polster Chappell
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record