UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARTHREX, INC.,

    Plaintiff,

-vs-                                                Case No.:  2:11-cv-694-FtM-29SPC

PARCUS MEDICAL, LLC,

    Defendant.

_____/

## ORDER

This matter comes before the Court on Defendant, Parcus Medical's Motion to Compel Production of Documents Concerning Arthrex's C3 Contracts and Other Documents Relevant to Commercial Success (Doc. # 53), filed on July 25, 2012.  Plaintiff, Arthrex filed its Response to Defendant's Motion to Compel Production of Documents Relating to Arthrex's C3 Program (Doc. # 61) on August 8, 2012.  Parcus Medical filed a Reply Brief in Support of Motion to Compel Production of Arthrex C3 Contracts (Doc. # 73) on August 20, 2012.  In response, Arthrex filed a Sur-Reply in Opposition to Parcus Medical's Motion to Compel Production (Doc. # 84) on August 31, 2012.  Pursuant to this Court's Order granting Parcus Medical's Motion for Leave (Doc. # 100), Parcus Medical filed a Supplemental Reply in Support of Parcus Medical's Motion to Compel Production of Documents Concerning Arthrex's C3 Contracts and Other Documents Relevant to Commercial Success (Doc. # 102) on September 28, 2012.  Arthrex filed its Response to Parcus Medical's Supplemental Reply in Support of Parcus Medical's Motion to Compel (Doc. # 107) on October 5, 2012.

The Federal Rules of Civil Procedure allow discovery of any relevant, non-privileged material that is admissible or reasonably calculated to lead to admissible evidence. Fed. R. Civ. P. 26(b)(1). Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Discovery requests are not only limited to the issues raised in the pleading, nor limited only to evidence that would be admissible at trial. Id. However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Id. "Courts have long held that '[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party to roam in the shadow zones of relevancy and to explore a matter which does not presently appear germane on the theory that it might conceivably become so.'" Henderson v. Holiday CVS, L.L.C., 2010 U.S. Dist. Lexis 80660, at *6 (S.D. Fla. Aug. 9, 2010) (quoting Food Lion, Inc. v. United Food & Commercial Workers Intern. Union, 103 F.3d 1007, 1012–13 (D.C. Cir. 1997)). "[T]he Federal Rules of Civil Procedure allow for broad discovery that does not need to be admissible at trial." Martin v. Zale Del., Inc., 2008 WL 5255555, * 2 (M.D. Fla. Dec. 25, 2008) (citing Fed. R. Civ. P. 26(b)).

After service of discovery, if the serving party does not receive a response to their interrogatories or request for production within the applicable time period, then the serving party may request an order compelling disclosure from the court. Fed. R. Civ. P. 37(a). Whether or not to grant the motion to compel is at the discretion of the trial court. Commercial Union Ins. Co. v. Westrope, 730 F.2d 729, 731 (11th Cir. 1984). The trial court's exercise of discretion will be sustained absent a finding of abuse of discretion to the prejudice of a party. Id.

*Defendant's Request for Production ## 60–67*

In Defendant's requests ##60–67, Defendant Parcus Medical requests Arthrex's C3 agreements and other documents related to the C3 Agreements. Plaintiff's response/objection to requests ## 60–67 are identical, except for claims that the requests are duplicative of others. Therefore, the Court will address these requests as a group, rather than individually. Plaintiff's response/objection to request 69 is slightly different from the other objections, therefore it has been set forth separately below.

**Request No. 60:** All C3 Agreements with any ASC, surgeon(s), group, hospital, person or entity.

**Request No. 61:** All emails, correspondence, summaries, memos, spreadsheets, descriptions, offers, solicitations, presentations, discussions, disclosures, negotiations, representations, descriptions, information, or other communications leading up to, connected with, concerning or relating to any C3 Agreement, whether such communications were with Arthrex employees, managers, agents or representatives, or with any distributor, agency, representative or agent working on Arthrex's behalf, or with any surgeon or ASC.

**Request No. 62:** All documents or communications concerning any reporting or compliance obligations, regulations or requirements relating to C3 Agreements.

**Request No. 63:** All documents or communications constituting or evidencing any compliance or attempted compliance by Arthrex or by any ASC or surgeon with any reporting obligations, regulations or requirements relating to any C3 Agreement or reimbursement for any services, cases, procedures, products or goods involving implants purchased under such C3 Agreements.

**Request No. 64:** Any communications from or to Arthrex or any distributor, agency, representative or agent working on Arthrex's behalf, concerning the use or non-use by any ASC or surgeon of any non-Arthrex consumables during the term of any C3 Agreement.

**Request No. 65:** All documents or communications concerning any request, inquiry or preference expressed by any ASC or surgeon to use any Arthrex or any competitor's consumables during the term of any C3 Agreement.

**Request No. 66:** All documents or communications (other than privileged communications between you and your own attorney(s)) concerning the legality,

illegality or compliance with applicable law or regulation of the C3 Agreements or any of their provisions.

**Request No. 67:** All discussion, analysis, audit, review, report, memorandum, inquiry, or investigation concerning the C3 Agreements' compliance with 42 U.S.C. § 1320a–7b(b) or the applicability of any safe harbor regulations (as set forth in 42 C.F.R. 1001.952) to the C3 Agreements (other than privileged communications between you and your own attorney(s)).

**Arthrex's response/objection(s) to Requests Nos. 60–67:** Arthrex objects to this request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine, and/or any other applicable privilege or immunity. Arthrex will not produce such protected documents. Arthrex further objects to this request as being overbroad, unduly burdensome and oppressive to the extent it seeks production of "all" documents. Arthrex further objects to this request as being overbroad and unduly burdensome to the extent it is not limited by time period or scope. Arthrex also objects to this request to the extent it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

      Arthrex further objects that Parcus has not properly plead a cause of action against Arthrex related to the C3 program and that Parcus' allegations related to the C3 program are subject to Arthrex's Motion to Dismiss, which is currently pending before the Court. Pending resolution of Arthrex's motion to dismiss, Arthrex may produce documents responsive to this request, to the extent they exist and can be located with a reasonable search, at a mutually convenient date and location following the entry of a mutually agreeable confidentiality agreement.

Arthrex objected to each of Parcus Medical's requests on identical grounds; contending that the items were privileged, the requests were overbroad and unduly burdensome, and they were neither relevant nor calculated to lead to the discovery of admissible evidence. (*See* Doc. # 53, Ex. 2). Plaintiff's boilerplate, one size fits all, objection to these requests is not well taken. "Parties are not permitted to assert these types of conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable." Martin, 2008 WL 5255555, at *1. With that said, the Court will address each contention that Plaintiffs have placed within their boilerplate objection to the Defendant's requests.

4

Arthrex's initial contention within its objection to the above requests is that the information sought by Parcus Medical is privileged and either protected by the attorney-client privilege, the work product doctrine, the accountant-client privilege, and/or any applicable privilege or immunity. This argument is unavailing for the following reasons. First, Parcus Medical has narrowly tailored its requests as to specifically exclude items protected by the attorney-client privilege, for example, see requests # 66 and 67, explicitly excluding privileged communications with the attorney. Second, Plaintiff has failed to meet its burden of proof in establishing that a privilege applies in regard to the other requests. The party invoking the privilege bears the burden of proof. Tyne v. Time Warner Entm't Co., L.P., 212 F.R.D. 596, 599 (M.D. Fla. 2002). "This burden can be met only by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory or *ipse dixit* assertions." CSX Transp., Inc., v. Admiral Ins. Co., 1995 WL 855421, *1 (M.D. Fla. July 20, 1995) (internal quotes omitted). Pursuant to Fed. R. Civ. P. 26(b)(3) & (5) this evidence is generally provided through the use of a privilege log. Typically, the privilege log will identify each document and the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is properly claimed. Id. at *3. Here, the Plaintiff has not met its burden in establishing that a privilege applies to the materials contained within requests # 60–67 or 69. However, if there are still documents that Plaintiff has not produced based upon privilege, Plaintiff must produce a privilege log.[1]

---

[1] A proper privilege log should contain the following information:

    (1) the name and job title or capacity of the author of the document;
    (2) the name and job title or capacity of each recipient of the document;
    (3) the date the document was prepared and if different, the date(s) on which it was sent
       to or shared with persons other than the author(s);
    (4) the title and description of the document;
    (5) the subject matter addressed in the document;
    (6) the purpose(s) for which it was prepared or communicated; and

Plaintiff next contends that the requests are overbroad, unduly burdensome, and oppressive to the extent that they seek the production of "all" documents and also with regard to documents relating to "any" surgeons.  Courts have held that "[o]bjections stating that a request is 'vague', 'overly broad', or 'unduly burdensome' are meaningless standing alone." Martin, 2008 WL 5255555, at 1.  Seeking "all" documents within a request for production may be determined by the court to be overbroad or burdensome on the producing party and it is true that the discovery rules do not permit a party to go on a "fishing expedition" for relevant information. Linares v. Broward County Sheriff's Office, 347 Fed. Appx. 424, 42 (11th Cir. 2009). However, just by indicating that the presence of the word "all" is within the request does not automatically make a request overly broad, burdensome, or oppressive.  Plaintiff has not demonstrated any reason despite the presence of the word "all" that makes these requests burdensome, overbroad, and/or oppressive.

Upon review of the specific requests at issue, the Court finds that the requests are in fact not overly broad, unduly burdensome, or oppressive.  Instead, the Court finds that the Defendant has narrowly tailored these requests and specifically limited them to documents pertaining to the C3 Agreements, and are not simply asking for any and all contracts that the Plaintiff has entered into.  Specifically, Defendant's requests ask for "All C3 Agreements . . ." and "All emails, correspondence, summaries . . . leading up to, connected with, concerning or relating to any C3 Agreement . . . ." (Doc. # 53, Ex. 2).  All of the Defendant's requests that are at issue, # 60–67, are limited/narrowed to those concerning C3 Agreements, this is specific and narrow, contrary to Plaintiff's argument.

---

(7) the specific basis for the claim that it is privileged.

See Roger Kennedy Constr. Inc. v. Amerisure Ins. Co., 2007 WL 1362746 ,* 1 (M.D. Fla. May 7, 2007) (detailing the information needed in a proper privilege log).

6

Additionally, within its argument that these requests are overly broad and burdensome, the Plaintiff resorts once again to discussing how these documents are not relevant because Parcus Medical's Count V was dismissed. However, since the Court's dismissal without prejudice of Parcus Medical's Count V, Parcus Medical has filed an amended pleading, amending Count V, based upon unfair trade practices, to which these requests are certainly within the broad scope of relevancy. To date, this Count has not been dismissed. As discussed *infra*, this Court finds that the documents requested by Parcus Medical are relevant not only to Parcus Medical's Counterclaim(s) and Affirmative Defense(s), but also to defenses raised by Arthrex.

As for relevancy, Parcus Medical's requests for production # 60–67, relating to documents concerning Arthrex's C3 Contracts and other incentive programs, appear relevant on their face. Parcus Medical raised a counterclaim for Deceptive and Unfair Trade Practices, to which the requested documents are directly relevant. (*See* Doc. # 87). The documents also appear to be relevant to Affirmative Defenses raised by the Defendant, such as unclean hands. (*See* Doc. # 87, p. 7). Further, Arthrex's C3 program is also relevant to the issue of commercial success that Arthrex has injected into the case, in regard to both alleged damages and the validity of the patents at issue. (Doc. # 53, pp. 7–12). For example, in response to Defendant's interrogatory no. 4, Arthrex stated that it may rely on "evidence of . . . commercial success" to rebut Parcus Medical's obviousness defense. (Doc. # 53, p. 5). Therefore, the Court rejects Plaintiff's objections to Defendants' Request for Production ## 60–67.

*Defendant's Request for Production # 69*

In Defendant's Request for Production # 69, Defendant requests documents regarding incentives or gifts by Arthrex to surgeons, etc. The Court has chosen to address this request and

7

Plaintiff's objection separately due to slight differences in Defendant's objection than the objection resented in regard to requests # 60–67.

> **Request No. 69:** All documents concerning any benefits, perquisites, gifts, gratuities, discounts, kickbacks, bribes, trips, travel, lodging, consulting agreements, consulting fees, reimbursements, payments (in cash or in kind), or any other things of value provided by Arthrex to any surgeons, ASCs, persons, hospitals, surgery centers, purchasers of Arthrex products, or potential purchasers of Arthrex products.
>
> **Arthrex's response/objection(s) to Request No. 69**: Arthrex objects to this request to the extent that it seeks documents protected by attorney-client privilege, the work product doctrine, the accountant-client privilege and/or any other applicable privilege or immunity. Arthrex will not produce such protected documents. Arthrex further objects to this request as being overbroad, unduly burdensome and oppressive to the extent it seeks production of "all" documents provided to "any" surgeons, ASC's etc. Arthrex further objects to this request as being overbroad and unduly burdensome to the extent it is in no way limited by time period or scope. Arthrex also objects to this request to the extent it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.
>   Arthrex further objects that Parcus has not properly plead a cause of action against Arthrex related to any alleged improper benefits and that Parcus' Counterclaim Count V is the subject of Arthrex's Motion to Dismiss, which is currently pending before the Court. Pending resolution of Arthrex's motion to dismiss, Arthrex may produce documents responsive to this request, to the extent they exist and can be located with a reasonable search, at a mutually convenient date and location following the entry of a mutually agreeable confidentiality agreement.

Many of the issues addressed *supra* are applicable to Arthrex's objection to request # 69. However, Arthrex's objection to request # 69 differs slightly from its other objections in that Arthrex now claims that Parcus has not properly plead a cause of action under Parcus Medical's Counterclaim Count V.  At this point, Parcus Medical's Count V has not been dismissed and is still a valid claim.  Pending a Motion to Dismiss, the possibility of dismissal is speculative, at this point request # 69 is relevant on its face.  Therefore, the Court rejects Plaintiff's objections to Defendant's request # 69.

Arthrex previously asked this court to delay deciding on this Motion until a similar motion pending in a related case in front of Magistrate Judge Frazier, 2:10-cv-151-FtM-99DNF, concerning the production of documents regarding the C3 programs had been decided. (Doc. # 61, p. 2; Doc. # 84, p. 1). The motion pending in front of Magistrate Judge Frazier in the related trade secret case has since been decided (*see* Case No.: 2:10-cv-151-FtM-99DNF, Doc. # 194), however whether or not the items requested are relevant in the instant case is entirely unrelated to the pending trade secret case in front of Magistrate Judge Frazier.

As discussed previously, Plaintiff has alleged that the C3 agreements and other documents are not relevant to any claim or defense. However, Parcus Medical has directly brought the C3 agreements into issue through its Counterclaim of Unfair and Deceptive Trade Practices, specifically the fact that Arthrex engages in C3 programs where it gives away expensive capital equipment to surgeons in exchange for exclusive dealing contracts. (Doc. #-87, p. 19). Further, Arthrex has contended to rely on evidence of commercial success to establish its damages. This would make the C3 agreements directly relevant because it could potentially establish, or break, the nexus between the alleged commercial success and the underlying patent(s). Based upon the foregoing, this Court will require Arthrex to provide the requested documents.

Accordingly, it is now

**ORDERED:**

(1) Defendant, Parcus Medical's Motion to Compel Production of Documents Concerning Arthrex's C3 Contracts and Other Documents Relevant to Commercial Success (Doc. # 53) is **GRANTED**.

(2) Plaintiff, Arthrex shall have up to and including November 6, 2012 to provide documents pursuant to this Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___1st___ day of November, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of Record